## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| KEVIN ALDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-2024-STA-dkv |
| | ) | |
| SHELBY COUNTY GOVERNMENT; | ) | |
| SHELBY COUNTY SHERIFF'S | ) | |
| OFFICE; SHELBY COUNTY, | ) | |
| TENNESSEE DIVISION OF | ) | |
| CORRECTIONS; and SERGEANT | ) | |
| "JANE" LOVE, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Before the Court is Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (D.E. # 11), filed on June 13, 2011. Plaintiff filed a Response (D.E. # 22) on October 10, 2011. Defendants filed a Reply (D.E. # 23) on October 21, 2011. For the following reasons, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

On January 8, 2011, Plaintiff filed his Complaint alleging eight causes of action: failure to protect, sexual assault, violation of his Fourth Amendment rights for an unreasonable search without probable cause, violation of his Fourteenth Amendment rights for being prohibited from filing a grievance, false imprisonment, violation of state policies and procedures section 305.03, and violations of 42 U.S.C. §§ 1981 and 1983. (D.E. # 1.) Defendants filed the Motion to

1

Dismiss, or in the Alternative, Motion for Summary Judgment before the Court on June 13, 2011.  (D.E. # 11.)

### Factual Basis for Complaint

The following facts will be taken as true for those claims before the Court as part of Defendants' Motion to Dismiss.  Plaintiff is a Caucasian male who was incarcerated at the Shelby County Division of Corrections ("SCDC") in Memphis, Tennessee, when the events underlying his § 1983 claim occurred.  (Compl. ¶ 7.)  On January 8, 2010, at about 10:45 p.m., Defendant Sergeant Love ("Love"), an African-American female, entered Plaintiff's dormitory and ordered all of the inmates to get out of their bunks.  (*Id.* ¶ 8.)  She instructed Plaintiff to come to her, put his hands on a bunk, and spread his legs.  (*Id.* ¶ 9-10.)  After Plaintiff did so, Love "strip searched" Plaintiff by unbuckling his belt, unbuttoning his pants, and pulling his pants down to his knees.  (*Id.* ¶ 11.)  As she did so, she accused him of possessing contraband although another inmate had admitted to the possession of the contraband.  (*Id.* ¶ 12.)  Next, Love "put her hands down [P]laintiff's boxer shorts and onto his private parts," which she "then proceeded to fondle."  (*Id.* ¶ 13.)  She also uttered a racial slur to Plaintiff, accusing him of membership in the Arian Nation.  (*Id.* ¶ 14.)

A male officer, Officer L. Johnson ("Johnson"), was present in the room while Love searched Plaintiff.  (*Id.* ¶ 15.)  After the search, Plaintiff tried to speak with Love's superiors, and they told him that he could not file a grievance about the incident.  (*Id.* ¶ 16.)  After the search, Plaintiff was removed from the work program and denied parole.  (*Id.* ¶ 17.)  Johnson is not named as a Defendant in Plaintiff's Complaint.

### Undisputed Material Facts

The following facts are undisputed except as otherwise noted.  SCDC inmates are subject to search of their persons and possessions.  (Defs.' Statement of Material Facts, D.E. # 11, at 11.)  Plaintiff does not dispute this fact to the extent that searches and seizures are conducted within the facility.  (Pl.'s Resp. to Defs.' Statement of Material Facts, D.E. # 22, at 2.)  SCDC's policies permit pat-down searches of inmates by corrections officers of the opposite gender, but strip searches must be conducted by corrections officers of the same gender.  (Defs.' Statement of Material Facts, D.E. # 11, at 11.)  SCDC also has a zero tolerance policy regarding sexual harassment and sexual misconduct with inmates.  (*Id.*)  While false reporting of sexual harassment or sexual misconduct with inmates may result in disciplinary action, retaliation for reporting such conduct is prohibited.  (*Id.*)  Plaintiff states that he does not have knowledge of SCDC policies for sexual harassment and sexual misconduct within SCDC.  (Pl.'s Resp. to Defs.' Statement of Material Facts, D.E. # 22, at 2.)

Defendants submit that they properly train and supervise corrections officers about applicable policies, procedures, laws, and constitutions, which includes training on inmate searches.  (Defs.' Statement of Material Facts, D.E. # 11, at 11.)  Plaintiff does not dispute this fact "to the extent that [he] does not have sufficient knowledge regarding the 'proper' training and supervision of corrections officers."  (Pl.'s Resp. to Defs.' Statement of Material Facts, D.E. # 22, at 2.)  SCDC rules prohibit contraband such as tobacco, drugs of any type, and cash in the SCDC.  (Defs.' Statement of Material Facts, D.E. # 11, at 11.)  Furthermore, smoking is prohibited inside the SCDC.  (*Id.*)

Defendants state that Plaintiff has an extensive disciplinary history involving smoking, possession of contraband such as tobacco, marijuana, and cash, and two positive drug test results

for marijuana. (*Id.* at 11-12.) Plaintiff disputes the characterization of this fact and argue that his disciplinary actions should not be classified as extensive, as Plaintiff was only incarcerated in 2004. (Pl.'s Resp. to Defs.' Statement of Material Facts, D.E. # 22, at 3.) The parties do not dispute that Plaintiff and another inmate, known as "Herron," were charged and disciplined for possessing contraband on January 8, 2010. (Defs.' Statement of Material Facts, D.E. # 11, at 12.) Love had not been previously accused of sexually assaulting an inmate. (*Id.*) Plaintiff does not dispute this fact, but he stated that he "does not have sufficient knowledge or belief to dispute or not dispute this" fact. (Pl.'s Resp. to Defs.' Statement of Material Facts, D.E. # 22, at 3.)

Defendants submit that Plaintiff's complaint regarding Love's false accusation of contraband possession and alleged sexual assault was investigated by the SCDC Office of Professional Standards. (Defs.' Statement of Material Facts, D.E. # 11, at 12.) Plaintiff does not dispute that the incident was investigated by the Office of Professional Standards. (Pl.'s Resp. to Defs.' Statement of Material Facts, D.E. # 22, at 3.) Plaintiff points to a letter he sent to the SCDC, signed by him and witnessed by his fellow inmates, and alleges that he was sexually assaulted by Love and that many people witnessed the assault.[1] (*Id.*)

Defendants contend that Plaintiff admitted in collect telephone calls to his mother that most of the inmates in his dormitory were smoking when Love entered the dormitory. (Defs.'

---

[1]     In their Reply, Defendants object to the admission of this unsworn letter. (Defs.' Reply, D.E. # 23, at 7.) They state that "[i]n ruling on a Rule 56 motion, the court must rely on admissible evidence." (*Id.*) The Court finds that Plaintiff's unsworn letter, signed by himself and witnessed only by his fellow inmates, is inadmissible. It is unauthenticated and was not made under the penalty of perjury, and as such, the Court will disregard the letter and all statements contained therein as it evaluates those portions of Plaintiff's Response relying on statements contained in this letter.

Statement of Material Facts, D.E. # 11, at 12.)  Furthermore, they state that Plaintiff admitted

that he actually possessed the contraband that Love discovered during her search of his person

and that he asked his mother to mail money to someone so he could get several weeks' worth of

cigarettes.  (*Id.*)  Plaintiff does not dispute that he admitted that many of the inmates possessed

contraband and that he asked his mother to mail money so that he could get cigarettes.  (Pl.'s

Resp. to Defs.' Statement of Material Facts, D.E. # 22, at 3.)  However, he relies on his unsworn

letter and disputes that he actually possessed the contraband.[2]  (*Id.*)

## STANDARD OF REVIEW

### Converting Defendants' Motion to Dismiss to a Motion for Summary Judgment

Defendants have moved to dismiss some of Plaintiff's claims against them pursuant to

Rule 12(b)(6) because the allegations as pled fail to state any claim as a matter of law.  In the

alternative, Defendants seek summary judgment as to other claims pursuant to Rule 56.  Fed. R.

Civ. P. 12(d) provides

> If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are
> presented to and not excluded by the court, the motion must be treated as one for
> summary judgment under Rule 56.  All parties must be given a reasonable
> opportunity to present all the material that is pertinent to the motion.[3]

The Sixth Circuit has described a trial court's decision to convert *sua sponte* a Rule 12 motion to

one for summary judgment as "serious error."[4]

Under the circumstances, the Court holds that it is unnecessary to convert the Motion or

---

[2]       As previously discussed, the Court will disregard the statements contained in
Plaintiff's inadmissible letter.

[3]       Fed. R. Civ. P. 12(d).

[4]       *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001).

5

give the parties notice that the Court will consider the Motion pursuant to Rule 56.  Defendants

moved for summary judgment in the alternative and attached an exhibit and Anthony C.

Alexander's Affidavit ("the Alexander Affidavit") to the Motion.[5]  Plaintiff responded in

opposition to the Motion by responding to Defendant's Statement of Material Facts and

presented a written—albeit inadmissible—statement signed by Plaintiff with his fellow inmates

as witnesses.[6]  Therefore, the Court finds that both parties had notice that Defendants' Motion

might be treated as one for summary judgment.

Furthermore, the Court need not consider all of the arguments raised in Defendants'

Motion under Rule 56.  Defendants argue that Plaintiff has failed to state some of his claims as a

matter of law, such as Plaintiff's claims against the Shelby County Sheriff's Office ("SCSO")

and Sheriff Mark Luttrell ("Sheriff Luttrell"), his state law claim for false imprisonment, and his

claim for punitive damages against Shelby County.  With respect to those claims, the Court's

analysis is limited to the well-pled allegations of the Complaint itself.[7]  Defendants have

attacked other claims by attaching the Alexander Affidavit and arguing that Plaintiff cannot

adduce evidence to make out a prima facie case as to those claims.  Defendants contend that they

are entitled to summary judgment as to those claims, such as Plaintiff's § 1983 claims against

Love in her individual capacity.  With respect to these claims, the Court must analyze them

pursuant to Rule 56 because both parties have produced evidence outside of the pleadings.  For

these reasons, the Court will consider some of Plaintiff's claims pursuant to Rule 12(b)(6) and

---

[5]    *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004).

[6]    *See id.*

[7]    *See Porter v. City of Dyersburg, Tenn.*, No. 07-2638, 2008 WL 2222693, at *2
n.1 (W.D. Tenn. Apr. 2, 2008).

others under a Rule 56 standard.

## Standard of Review

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pled factual allegations of the complaint as true, construe those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the plaintiff.[8] However, legal conclusions "masquerading as factual allegations" or unwarranted factual inferences including "conclusory allegations" need not be accepted as true.[9] To avoid dismissal under Rule 12(b)(6), "the complaint must contain either direct or inferential allegations" with respect to all material elements of the claim.[10]

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"[11] Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[12] To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a

---

[8]     *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2007).

[9]     *Id.*

[10]    *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

[11]    Fed. R. Civ. P. 8(a)(2).

[12]    *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1953 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[13]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15]  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[16]  When considering a motion for summary judgment, "the court must view the evidence and draw all reasonable inferences in favor of the non-moving party."[17]  At summary judgment, the primary "issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[18]  Thus, the Court will view all evidence and draw all reasonable inferences in favor of Plaintiff, as Plaintiff is the non-moving party.

## <u>ANALYSIS</u>

---

[13]     *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 570.

[14]     *Iqbal,* 129 S. Ct. at 1949.

[15]     *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).

[16]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(a)).

[17]     *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

[18]     *Pittman*, 640 F.3d at 723 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

In his Response, Plaintiff did not contest several areas of Defendants' Motion. Accordingly, the Court will address those issues first before proceeding to the contested issues.

### Abandonment of Certain Claims

In their Reply, Defendants cite to inapposite non-binding authority and argue that Plaintiff abandoned several of his claims by "failing to respond to issues and failing to come forward with significantly probative evidence."[19]  In further support of this argument, Defendants rely on Federal Rule of Civil Procedure 56(e), which provides that a court may take various actions "[i]f a party fails to properly support an *assertion of fact* or fails to properly address another party's *assertion of fact*."[20]  Defendants conflate the standards for a Motion to Dismiss and a Motion for Summary Judgment and ask the Court to hold that Plaintiff abandoned his claims under the Fourth Amendment, pertaining to filing grievances, pertaining to his right to employment while in prison, pertaining to a right to early parole, pertaining to a right to have policies and procedures followed, claims under state tort law, and claims for punitive damages against Shelby County.[21]

Although the Court finds Plaintiff's Response wanting and insufficient, he responded to the core claims asserted in the Complaint: the alleged violations of §§ 1981 and 1983. Therefore, the Court declines to find that Plaintiff has abandoned his claims, and it will proceed to evaluate the remainder of his claims.

### Claims Against Shelby County Sheriff's Office and Division of Corrections

---

[19]   (Defs.' Reply, D.E. # 23, at 6.)

[20]   Fed. R. Civ. P. 56(e) (emphasis added).

[21]   (Defs.' Reply, D.E. # 23, at 7.)

Plaintiff's Complaint names both the SCSO and SCDC as parties.[22]  Defendants have moved for dismissal of these parties as they are not cognizable legal entities subject to suit; instead, they are subdivisions of the Shelby County Government.[23]  The Court finds this assertion to be correct: the SCSO and the SCDC are not separate legal entities; instead, they are subdivisions of the Shelby County Government.  Therefore, they are incapable of being sued for the claims asserted by Plaintiff.[24]  Therefore, all claims against the SCSO and SCDC are **DISMISSED** pursuant to Rule 12(b)(6).

## Official Capacity Claim Against Sheriff Mark Luttrell

Plaintiff has sued Sheriff Luttrell in his official capacity.[25]  Defendants argue that such an official capacity claim is essentially a claim against Shelby County.[26]  The Court agrees. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."[27] When government employees like Sheriff Luttrell are sued in their official capacities, the action "is equivalent to a suit against" Shelby County.[28]  Therefore, all claims against Sheriff Luttrell in his official capacity with the SCSO are **DISMISSED** pursuant to Rule 12(b)(6).  Therefore, the only remaining government defendant at this point in the Order is the Shelby County

---

[22]     (Compl. ¶ 3-4.)

[23]     (Defs.' Mot., D.E. # 11, at 13.)

[24]     *See Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007).

[25]     (Compl. ¶ 3.)

[26]     (Defs.' Mot., D.E. # 11, at 13.)

[27]     *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)).

[28]     *Knott v. Sullivan*, 418 F.3d 561, 574-75 (6th Cir. 2005).

Government ("Shelby County").

## State Tort Claims Against Shelby County

Plaintiff appears to have brought suit for false imprisonment, sexual assault, violation of state policies and procedures, and failure to protect.[29]  However, Plaintiff's Complaint is devoid of references to the Tennessee Governmental Tort Liability Act ("TGTLA"), which waives sovereign immunity in certain instances, thus permitting governmental entities to be sued for torts.  By failing to plead that Shelby County's immunity is removed by the TGTLA, Plaintiff's Complaint is deficient for that reason alone, and the Court would dismiss all state law claims against Shelby County.  Moreover, neither Defendants nor the Court can identify exactly which state law claims Plaintiff is bringing, if indeed Plaintiff has brought any state law tort claims against Shelby County at all.[30]  Therefore, due to Plaintiff's failure to plead the inapplicability of sovereign immunity, the Court finds that all of the separate and independent tort claims asserted against Shelby County would be dismissed.

Moreover, even if Plaintiff had pled the TGTLA, the state law claims would still be dismissed as to Shelby County.  The TGTLA removes the cloak of sovereign immunity from the state, including municipalities, except as delineated in the list of exceptions to this removal.[31] Sovereign immunity is not removed in cases where the injury *arises out of* a violation of a defendant's civil rights.[32]  The Sixth Circuit and other district courts in this state have noted that

---

[29]     (Compl. ¶ 20-21, 26-29.)

[30]     (*See* Defs.' Mot., D.E. # 11, at 20.)

[31]     *See Johnson v. City of Memphis*, 617 F.3d 864, 871-72 (6th Cir. 2010).

[32]     *See* Tenn. Code Ann. § 29-20-205(2).

the TGTLA's civil rights exception extends to claims arising under 42 U.S.C. § 1983 and the United States Constitution.[33]  Where a tort claim arises out of the same factual circumstances giving rise to a civil rights claim under § 1983, it falls within the exception listed at Tenn. Code Ann. § 29-20-205, and the government entity retains its immunity.[34]

To the extent that the claims raised by Plaintiff constitute state law torts, the Court finds that they arise out of the same factual essence at the core of this lawsuit: a violation of Plaintiff's constitutional rights under § 1983.  The same facts underlying these torts also give rise to Plaintiff's claims for false imprisonment (removal from work program and denial of parole caused by allegedly false accusations of possession of contraband and Plaintiff's complaint against Love for sexual assault), violation of state policies and procedures (Plaintiff's damages and sexual assault resulted from violation of the policies and procedures for interactions of employees at SCDC), failure to protect (failure to supervise personnel resulted in Plaintiff's alleged sexual assault), and sexual assault (arising from Love's alleged fondling).  Therefore, to the extent that these four claims constitute state law tort claims separate and independent of § 1983, the TGTLA has not removed the cloak of sovereign immunity from Shelby County. Accordingly, Plaintiff's state law tort claims against Shelby County which arise from the same facts as his § 1983 claims are **DISMISSED** under Rule 12(b)(6).  However, any state law claims Plaintiff has asserted against Love remain viable.

---

[33]     *See, e.g.*, *Campbell v. Anderson Cnty.*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) ("These torts are alleged to have been committed solely in the context of the violation of [plaintiff's civil rights—this is in essence a civil rights suit."); *Hale v. Randolph*, No. 02-CV-334, 2004 WL 1854179, at *17 (E.D. Tenn. Jan. 30, 2004).

[34]     *See Johnson*, 617 F.3d at 872.

**False Imprisonment**

Plaintiff's Complaint alleges that he was falsely imprisoned because he was "removed from his work program and denied parole" due to the "false accusations" leading to the discovery of contraband on his person and his subsequent complaint against Love for the alleged sexual assault.[35]  Defendant has also moved for dismissal of Plaintiff's false imprisonment claim on grounds separate from those pertaining to false imprisonment's status as a state law tort claim.[36]  To the extent that this claim is not covered by the Court's dismissal under the State Tort Claims section above, the Court will address it separately here.

The elements of false imprisonment are "(1) the [intentional] detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint."[37]  Here, it is undisputed that Love intentionally restrained Plaintiff against his will; therefore, whether Plaintiff has stated a claim for false imprisonment will depend upon whether his restraint was unlawful.  Defendants appear to challenge the second element of Plaintiff's false imprisonment claim and essentially assert that his restraint and the damages arising therefrom were not unlawful.  They allege that prisoners have no protected interest in prison employment or early parole.

It is well settled that inmates do not have a property or a liberty interest in prison employment and that any such interest must be created by state law with language of an unmistakably mandatory character.[38]  Moreover, the Supreme Court has held that "[t]here is no

---

[35]     (Compl. ¶ 26-27.)

[36]     (Defs.' Mot., D.E. # 11, at 19.)

[37]     *Newsom v. Thalhimer Bros., Inc.*, 901 S.W.2d 365, 367 (Tenn. Ct. App. 1994).

[38]     *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (citing cases from the Supreme Court and Fourth, Seventh, Tenth, and Eleventh Circuits).

constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. . . . Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."[39]

The Court finds inapposite and unavailing Plaintiff's claim that his removal from his work program and the denial of his parole resulted in false imprisonment. As to Plaintiff's asserted imprisonment due to his denial of participation in a work program, Plaintiff did not respond to this portion of Defendants' Motion, and as such, he did not point to a state law with language indicating that he has a constitutionally protected interest in prison employment. Furthermore, the Court finds that he did not have a constitutionally protected interest in participating in the work program. Accordingly, his removal from the work program was not unlawful, and he cannot demonstrate the second element of false imprisonment.

Plaintiff's assertion that he was falsely imprisoned due to his denial of parole fails on similar grounds. Because he has no constitutionally protected right to be released before his sentence expires, he has not shown that his continued detention for the duration of his sentence is unlawful. Therefore, Plaintiff fails to demonstrate the second element of false imprisonment with regard to this aspect of his false imprisonment claim as well. Accordingly, Plaintiff has failed to state a claim for false imprisonment, and his false imprisonment claim is **DISMISSED** under Rule 12(b)(6) against all defendants, including Love.

## Violation of Policies and Procedures

Independent of his § 1983 claims, Plaintiff alleges a violation of state policies and

---

[39]     *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).

procedures § 305.03 as a separate cause of action.[40]  Defendants have sought dismissal of this claim because any violation of state policies or procedures does not give rise a cause of action or create a federal constitutional right.[41]  Plaintiff appears to respond to this argument, but the only reference in his Response to the policies allegedly violated is as follows: "Plaintiff alleges that Love, not another male officer, conducted the strip search on Plaintiff. . . . This action goes directly against the policies as outlined in the affidavit as provided by Defendants."[42]  Accordingly, Plaintiff does not address how § 305.03 creates an independent cause of action.

While it is well settled that "a state statute cannot 'create' a federal constitutional right,"[43] Plaintiff has not alleged the creation of a right under § 305.03.  Moreover, § 305.03 is not a state law; rather, according to the Complaint, it appears to be a policy "for interactions of employees of the institutions and the inmates of the institutions."[44]  As such, it does not give rise to a federal constitutional right which could be violated, nor does it create a cause of action under state law.  Furthermore, in a § 1983 case, the primary issue is whether the defendant violated the Constitution, not whether he merited discipline under a local policy guideline.[45]  Therefore, the fact that Love may have violated § 305.03 is wholly irrelevant to the Court's § 1983 analysis of

---

[40]      (Compl. ¶ 28-29.)  Plaintiff failed at attach a copy of § 305.03 to his Complaint. As such, even if violation of an SCDC policy would create a cause of action, the Court would be unable to find that he had stated a claim within its provisions.

[41]      (Defs.' Mot., D.E. # 11, at 16.)

[42]      (Pl.'s Resp., D.E. # 22, at 6.)

[43]      *Harrill v. Blount Cnty., Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995).

[44]      (Compl. ¶ 29.)

[45]      *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).

her individual liability.

Therefore, to the extent that Plaintiff's violation of policies and procedures claim

constitutes an independent cause of action, Defendants' Motion is granted, and the claim is

**DISMISSED** under Rule 12(b)(6) against all defendants, including Love. Also, any § 1983

claim Plaintiff has attempted to state for violating § 305.03 is **DISMISSED** under Rule 12(b)(6)

as well.

## Government Liability

### *Respondeat Superior*

Plaintiff's Complaint alleges that Love's employer, the Shelby County Government, is

liable under the theory of *respondeat superior* for the acts of its employee which damaged

Plaintiff.[46]  A local government entity like Shelby County "cannot be held liable under § 1983 on

a *respondeat superior* theory."[47]  Therefore, any claim against Shelby County based strictly on

the acts of any Shelby County employee, without an assertion that Shelby County itself was the

wrongdoer, must be dismissed as a matter of law.  Therefore, Defendants' Motion is **GRANTED**

under Rule 12(b)(6) as to Shelby County's liability under a theory of *respondeat superior*.

## Shelby County's Liability Under § 1983

Section 1983 creates a cause of action when there is a deprivation "of any rights,

privileges, or immunities secured by the Constitution," as a result "of any statute, ordinance,

---

[46]      (Compl. ¶ 18.)

[47]      *Knott v. Sullivan*, 418 F.3d 561, 574-75 (6th Cir. 2005) (citing *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978)).

regulation, custom, or usage of any State."[48]  In cases of local government liability, a plaintiff

must allege the following: (1) that the plaintiff has suffered a deprivation of a constitutional

right; and (2) the local government is responsible for that violation.[49]  Furthermore, a local

government entity, such as a municipality, "is not vicariously liable under § 1983 for the

constitutional torts of its agents: it is only liable when it can be fairly said that the [entity] itself

is the wrongdoer."[50]  Instead, a plaintiff must allege that the constitutional tort was a result of a

policy or custom of the local government entity itself.[51]

To establish the second prong of all of his § 1983 claims, Plaintiff must show that Shelby

County was responsible for the alleged constitutional deprivations.  As previously discussed, a

municipality cannot be held liable pursuant to § 1983 under the theory of *respondent superior*

for the actions of its employees.[52]  For a municipality to be liable under § 1983, the local

---

[48]     42 U.S.C. § 1983.

[49]     *Doe v. Claiborne County, Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103
F.3d 495, 505-06 (6th Cir. 1996).

[50]     *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121 (1992).  *See also Jett v.
Dallas Indep. Sch. Dist.*, 491 U.S. 701, 726-29 (1989) (discussing history of civil rights statutes
and concluding that Congress plainly did not intend to impose vicarious liability on counties,
municipalities or other local governmental bodies); *City of Canton, Ohio v. Harris*, 489 U.S.
378, 388 (1989) (rejecting simple vicarious liability for municipalities under § 1983).

[51]     *City of St. Louis v. Praprotnik*, 458 U.S. 112, 122 (1988) (interpreting rejection of
*respondeat superior* liability by *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978), as a
command that "local governments . . . should be held responsible when, and only when, their
official policies cause their employees to violate another person's constitutional rights");
*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986) (same); *Stemler v. City of Florence*,
126 F.3d 856, 865 (6th Cir. 1997) (rejecting claims against city and county and holding that "in
order to state a claim against a city or a county under § 1983, a plaintiff must show that his
injury was caused by an unconstitutional 'policy' or 'custom' of the municipality," citing
*Pembaur*).

[52]     *Monell*, 436 U.S. at 691.

government's policy or custom must be the "moving force of a constitutional violation."[53]  A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law."[54]  In turn, the notion of the "law" must include "[d]eeply embedded traditional ways of carrying out state policy."[55]  It must reflect a course of action deliberately chosen from among various alternatives.[56]  In short, a "custom" is a "legal institution" not memorialized by written law.[57] Additionally, Plaintiff must show a direct causal link between the custom and the constitutional deprivation, that is, "the particular injury was incurred because of the execution of that policy."[58]

Here, Plaintiff's Complaint is a conglomeration of claims, alleged constitutional violations, and overly conclusory allegations of violations of §§ 1981 and 1983.  While Plaintiff does allege that he suffered damages and sexual assault in violation of the policies and procedures for interactions between SCDC employees and inmates,[59] he has not pointed to any Shelby County custom or policy causing these damages.  Although he states that Love "acted by

---

[53]    *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1982) (quoting *Monell*, 436 U.S. at 694).

[54]    *Monell*, 436 U.S. at 691 (internal quotation marks and citations omitted); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.), *cert. denied*, 510 U.S. 826 (1993).

[55]    *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940).

[56]    *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985).

[57]    *Feliciano*, 988 F.2d at 655.

[58]    *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted), *cert. denied*, 510 U.S. 1177 (1994).

[59]    (Compl. ¶ 29.)

18

virtue of and under the color of her office . . . and is personally liable to . . . Plaintiff for her intentional acts causing . . . damage,"[60] nowhere in Plaintiff's Complaint does he assert that Shelby County has put in place a custom or policy that was the moving force behind his damages.  Even if true, one violation of § 305.03 does not a pattern, policy, or custom make.  Indeed, the presence of § 305.03 in the SCDC's policy manual demonstrates that Shelby County has a policy *against* its employees sexual assaulting inmates at the SCDC.

Defendants' Motion asserts that they appropriately train and supervise their corrections officers and that no policy acted as a moving force behind any constitutional violation alleged by Plaintiff.[61]  Consequently, Defendants imply that they should not be liable for any constitutional torts committed by Love.  Defendants point to the Alexander Affidavit, which was attached to their Motion and contains a delineation of Defendants' policies regarding inmate searches, sexual harassment and sexual contact with inmates, training, and supervision.  Because this evidence is outside the pleadings, Defendants have converted the Motion to Dismiss their liability under § 1983 to a Motion for Summary Judgment.[62]

In response, Plaintiff fails to address Defendants' arguments or present any evidence sufficient to create a genuine issue of material fact in this regard.  First, although he correctly

---

[60]      (Compl. ¶ 33-34.)

[61]      (Defs.' Mot., D.E. # 11, at 19.)

[62]      The Court finds admissible the portions of the Alexander Affidavit relating to those matters of which Alexander had personal knowledge.  As the American Correctional Association Coordinator, he has personal knowledge of Defendants' policies, training, and procedures.  Therefore, that portion of his Affidavit is admissible as to Defendants' liability under § 1983.  However, the Court finds that his knowledge of the events of January 8, 2010, arise not from his personal knowledge but from his reading of the "OPS Findings."  Therefore, he did not have personal, firsthand knowledge of the circumstances surrounding Love's search of Plaintiff, and the Court must disregard that evidence under Rule 56(c)(4).

recites law stating that "supervisory personnel can be held liable under § 1983 if the supervisors condoned, encouraged, or knowingly acquiesced in the alleged misconduct," he does not allege that Love was a supervisor, nor has he sued Johnson, the officer who observed the offensive search.[63]  Second, Plaintiff argues that "[Johnson] did nothing to stop the incident from occurring [and that] the supervisors should have been on notice of the alleged wrongdoing and actions of . . . Love."[64]

These allegations are insufficient to meet or address Defendants' assertions that Shelby County does not have a custom, pattern, practice, or policy that was the moving force behind any potential constitutional tort committed by Love.  Therefore, the Court finds that Plaintiff has failed to create a genuine issue of material fact on this issue.  Thus, Defendants' Motion regarding their lack of liability for any constitutional torts committed under § 1983 by Love is **GRANTED** under Rule 56, and Shelby County will not be liable for any constitutional torts committed in this case.  However, Love was also sued in her individual capacity and would be responsible for any constitutional torts she committed if she was acting under the color of state law when the torts occurred; as such, the Court will address whether Plaintiff has stated a claim for any constitutional torts later in this Order.

## Punitive Damage Claims Against Shelby County

Although his Complaint is unclear, Plaintiff appears to request punitive damages against all Defendants named in this case, including Shelby County and Love in her individual capacity. Defendants have argued that any claims for an award of punitive damages against Shelby County

---

[63]    (Pl.'s Resp., D.E. # 22, at 5.)

[64]    (*Id.* at 6.)

20

should be dismissed.[65]   Plaintiff has not briefed the issue in his response to Defendants' Motion.

Nevertheless, it is well-settled that a municipality or county government is "immune from

punitive damages under 42 U.S.C. § 1983."[66]  Furthermore, municipalities are also immune from

punitive damages under 42 U.S.C. § 1981.[67]  Therefore, Plaintiff is barred as a matter of law

from seeking punitive damages against Shelby County, and Defendants' Motion is **GRANTED**

as to this claim.

**Contested Claims**

In his Response, Plaintiff address the following areas of Defendants' Motion: the § 1981

claim, the § 1983 claim as related to verbal slurs or comments, and the § 1983 claim as relates to

the Eighth Amendment, the duty to protect, violation of policies and procedures, and search and

seizure.  The Court will first address the assertions which appear to be Motions to Dismiss

before turning to those claims relying on evidence outside the pleadings, which appear to be

Motions for Summary Judgment.

**§ 1983 as relates to the Fourteenth Amendment Right to File a Grievance**

In his Complaint, Plaintiff argues that Defendants violated his due process rights under

the Fourteenth Amendment by denying him the right to file a grievance after he was allegedly

---

[65]         (Defs.' Mot., D.E. # 11, at 20.)

[66]         *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  The Sixth
Circuit has consistently followed the holding in *City of Newport*.  For instance, in *Barnier v.
Szentmiklosi*, the Court relied upon the holding in *City of Newport* to assert that a plaintiff was
not entitled to receive punitive damages from a municipality in § 1983 case.  810 F.2d 594, 598-
99 (1987).

[67]         *Fauser v. Memphis Hous. Auth.*, 780 F. Supp. 1168, 1176 (W.D. Tenn. 1991).

21

assaulted by Love.[68]  In their Motion, Defendants argue that not only is there no constitutional right to file a grievance but that the SCDC investigated Love's conduct after Plaintiff complained about the search at issue.[69]  Plaintiff did not respond to this argument.

No portion of the Constitution, including the Fourteenth Amendment, recognizes the inherent right to file a grievance.[70]  While the Sixth Circuit has recognized that the filing of a grievance is protected conduct under the First Amendment for which a prisoner may not be subjected to retaliation,[71] Plaintiff does not couch his grievance claim as retaliatory under the First Amendment.  Nor does he allege that he was denied access to the court system.  Rather, Plaintiff's grievance claim is limited to a due process violation of his right to administrative relief.  As such, the Court finds that because no right to file a grievance exists under the Fourteenth Amendment's due process clause, Plaintiff has no constitutional right which would have been violated by the SCDC's denial of his grievance.  Therefore, Plaintiff's Fourteenth Amendment due process claim under § 1983 is **DISMISSED** under Rule 12(b)(6) against all Defendants, including Love.

### § 1981

42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be

---

[68]        (Compl. ¶ 24-25.)

[69]        (Defs.' Mot., D.E. # 11, at 15.)

[70]        *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *Wynn v. Wolf*, 19 F.3d 1435, at *1 (6th Cir. 1994).

[71]        *See Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999).

parties, give evidence, and to the full and equal benefit of all laws and proceedings for the

security of persons and property as is enjoyed by white citizens, and shall be subject to like

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."[72]

These rights are also protected "against impairment by nongovernmental discrimination and

impairment under color of State law."[73]

Section 1981 is "generally invoked in the employment context for . . . claims of hostile

[work] environment, failure to promote, or wrongful dismissal;" other common situations

involving § 1981 litigation include claims of discrimination in retail and service settings.[74]

Courts in the Sixth Circuit have adopted slightly different prima facie cases depending upon the

specific discrimination asserted under § 1981.  For example, in commercial establishment cases,

a plaintiff must show membership in a protected class, that he sought to make or enforce a

contract for services ordinarily proved by the defendant, and that he was denied the right to enter

into or enjoy the benefits or privileges of the contractual relationship.[75]

For an employment-based claim involving circumstantial evidence of discrimination, the

elements of a prima facie case as well as the allocations of the burden of proof are the same as

those under Title VII.[76]  In those cases, a plaintiff must demonstrate that he is a member of the

protected class, that he applied for and was qualified for an available position, that he was

---

[72]     42 U.S.C. § 1981(a).

[73]     *Id.* § 1981(c).

[74]     *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

[75]     *Id.* at 872.

[76]     *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).

rejected despite his qualifications, and that the position remained open and the employer continued to seek applications from persons with his qualifications.[77]   Rather than rely on any binding precedent, Plaintiff and Defendants cite to a Tenth Circuit case and allege that a prima facie case of discrimination under § 1981 contains three elements: 1) membership in a protected class, 2) intent to discriminate on the basis of race, and 3) that the discrimination interfered with a protected activity under § 1981.[78]   However, in light of the factual basis for Plaintiff's § 1981 claim, the Court finds that the exact formulation of the elements of a prima facie case will matter little to the outcome of Plaintiff's § 1981 claim.

Plaintiff's Complaint alleges that he "was singled out by an [African-American] female with another male officer watching [during his unreasonable strip search], directly in violation of 42 U.S.C. § 1981(a) and (c)."[79]   In their Motion, Defendants argue that the claim should be dismissed because Plaintiff had no protected right to have contraband in the SCDC facility.[80]   Moreover, they assert that he was not singled out or treated any differently than others and that every prisoner is subject to being searched.[81]   Defendants also rely on statements Plaintiff made in jail call conversations with his mother after the search, thereby converting their Motion as to

---

[77]      *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[78]      *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001).

[79]      (Compl. ¶ 31.)

[80]      (Defs.' Mot., D.E. # 11, at 14.)

[81]      (*Id.*)  This argument is without merit, as he and Herron were the only two inmates in the dormitory who were subjected to search.

this claim into one for summary judgment.[82]

In response, Plaintiff states that he and Herron were the only two inmates—and were also Caucasian males—searched by Love, an African-American female.[83]  The Court has difficulty discerning Plaintiff's argument, but it appears that he argues that he has stated a prima facie case of discrimination under § 1981 because he was searched without justification by a female of a different race.[84]  In reply, Defendants again point to the unauthenticated and inadmissible jail call recording in which Plaintiff admits that he possessed contraband and note that the SCDC's internal investigation concluded that Love's search of Plaintiff's person did not violate any policy.[85]  In advancing these arguments, both parties wholly fail to address whether Plaintiff has indeed managed to make out a prima facie case under § 1981.

The Court fails to see how Love's search of Plaintiff was "directly in violation" of § 1981.  Although the Court recognizes that reverse discrimination is a valid cause of action under § 1981 and that Plaintiff and Love's differing races would presumably satisfy the requirement

_____

[82]      Both parties rely on inadmissible evidence in this aspect of Defendants' Motion for Summary Judgment.  Defendants' CD is not authenticated and is not accompanied by a transcript.  Plaintiff's handwritten letter does not note that it is an affidavit or other admissible form of evidence under Rule 56(c)(4), nor does it indicate that he wrote it under the penalty of perjury.  Therefore, the Court finds that it is not presented with adequate admissible evidence from which it could grant summary judgment.  However, even though the Court has disregarded this evidence in its analysis, Defendants moved for summary judgment as an alternative to dismissal.  Therefore, the Court finds that it can evaluate Plaintiff's § 1981 claim under Rule 12(b)(6).

[83]      (Pl.'s Resp., D.E. # 22, at 5.)

[84]      (*Id.* at 4-5.)

[85]      In addition to this evidence's inadmissibility, the Court does not connect how Plaintiff's admission of possession of the contraband *after* the contraband had already been found and the offensive search had taken place is relevant to Defendants' argument that Plaintiff cannot state a claim for a § 1981 violation.

that he is a member of a protected class,[86] Plaintiff's § 1981 claim does not have any conceivable basis in the language of § 1981.  The factual basis for Plaintiff's claim relates to the allegedly unreasonable strip search of his person by a female of a different race while a male officer watched.  This basis has nothing to do with making or enforcing contracts or the other protected actions listed in § 1981(a).  Therefore, Plaintiff has not alleged that he engaged in any form of protected activity.

Moreover, Plaintiff has failed to present any evidence of background circumstances, other than the racial slur uttered by Love, that he was discriminated against because of his race and as such qualifies as a member of a protected class.  As the racial slur was contemporaneous with the offensive search, Love's utterance does not qualify as a background circumstance upon which Plaintiff could rely.  Plaintiff is represented by counsel, and the Court will not take pains to read causes of action into the Complaint which are simply absent.[87]  Indeed, "[d]istrict courts read motions, not minds, and nothing requires them 'to distill any possible argument which could be made based on the materials before [them].'"[88]

---

[86]    *See Anderson v. Avon Prods., Inc.*, 340 F. App'x 284, 288 (6th Cir. 2009) (noting that "where a non-minority plaintiff alleges 'reverse discrimination,' as [plaintiff] does here, [the protected class] requirement 'is adapted to require the plaintiff to prove background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority'").  Under the reverse discrimination doctrine, the plaintiff bears the burden of demonstrating that he was intentionally discriminated against despite his majority status. *Id.*

[87]    *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotations omitted)).

[88]    *Siler v. Webber*, 443 F. App'x 50, *8 (6th Cir. 2011).

26

Nonetheless, the Court will attempt to interpret Plaintiff's § 1981 claim.  The only conceivable § 1981 claim the Court can discern from the morass of arguments before it is that Love's search subjected him to punishment different from that given to the other inmates smoking in the dormitory.  Or perhaps Plaintiff is attempting to argue that he did not receive the benefit provided to his fellow inmates of not being searched on January 8, 2010.  Whether the search amounts to "punishment" under the Eighth Amendment will be discussed later in this Order.  Regardless, the Court does not so broadly construe § 1981.  Due to § 1981's ties to employment law and other contractually-based causes of action, the Court finds that Plaintiff's right to equal "punishment" under § 1981 would necessarily be limited to punishments arising in those contexts.  Because Plaintiff has not alleged any racial discrimination in such contexts in this case, and the Court finds that even if Plaintiff had done so, Love's search of his person—the basis for his § 1981 claim—has nothing to do with a punishment or any other "pain, penalty, tax, license, [or] exaction," the Court finds that Plaintiff has failed to state a claim under § 1981(a).[89]

Just as Plaintiff has failed to state a claim under § 1981(a), he has also failed to state a claim under § 1981(c).  Plaintiff did not allege that any of his rights *related to the rights delineated in § 1981(a)* were impaired by nongovernmental discrimination or impaired under color of state law as required by § 1981(c).  That he avers that a host of his constitutional rights were violated by Love's search is not enough to implicate liability under § 1981(c).  Thus, Plaintiff has failed to state a claim under § 1981(c).

Therefore, the Court finds that Plaintiff has not alleged a prima facie case under §§

---

[89]    *See* 42 U.S.C. § 1981(a).  Although Plaintiff is male and Love is female, gender discrimination is not prohibited by § 1981.  *See id.* §§ 1981(a)-(c).

1981(a) or 1981(c).  He has not alleged that he engaged in any activity protected under § 1981, nor has he pled that he was a victim of racial discrimination.  Furthermore, even if he was discriminated against because of his race, he has not alleged that the discrimination affect his ability to "make and enforce contracts, to sue, be parties, [or] give evidence . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens" or that he was not "subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind."[90]  Accordingly, Plaintiff's § 1981 claim against all defendants, including Love, is hereby **DISMISSED** under Rule 12(b)(6).

### § 1983 Claim for Violation of the Fourth Amendment

The Supreme Court has "repeatedly held that prisons are not beyond the reach of the Constitution."[91]  Although prisoners retain many constitutional rights, including those under the First, Eighth, and Fourteenth Amendments, other constitutional rights are necessarily overridden by their imprisoned status.[92]  In *Hudson*, the Supreme Court held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of a prison cell."[93]

In his Complaint, Plaintiff states that Love's search of his person was an unreasonable

---

[90]     *See id.*

[91]     *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) ("Indeed, we have insisted that prisoners be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration.").

[92]     *Id.* at 523-24.

[93]     *Id.* at 526.

search made without probable cause as Love knew that another inmate had confessed to possession of the contraband.[94]  In their Motion, Defendants argue that the Fourth Amendment "pertains to pretrial detainees" and that as a convicted prisoner, Plaintiff was not covered by the Fourth Amendment.[95]  In response, Plaintiff appears to include his Response to Defendants' Fourth Amendment argument in his section entitled "Violation of 42 U.S.C. § 1983/Eighth Amendment/Duty to Protect/Violation of Policies and Procedures/Search and Seizure."[96] However, the Court cannot discern from Plaintiff's single paragraph of argument where he addresses Defendant's arguments regarding his Fourth Amendment Claim.

But it makes little difference whether Plaintiff has attempted to refute Defendants' arguments.  The Supreme Court has made clear that "[a] right to privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."[97]  Therefore, Plaintiff cannot state a constitutional violation for an unreasonable search of his person taking place in the dormitory at the SCDC.  That he was in a dormitory rather than an individual cell if of little import.  Accordingly, to the extent that Plaintiff's Fourth Amendment claim constitutes an individual cause of action under § 1983 as against Love, it is hereby **DISMISSED** under Rule

---

[94]     (Compl. ¶ 23.)

[95]     (Defs.' Mot., D.E. # 11, at 15.)  This argument misses the Supreme Court's carefully-made distinction: it is not that the Fourth Amendment does not apply in prisoners' cells; rather, it does apply, but the prisoners' asserted right to privacy is not one which society is prepared to recognize as reasonable under *Katz v. United States*, 389 U.S. 347 (1967). Therefore, Plaintiff cannot state a claim for violation of his Fourth Amendment rights.  *See Hudson*, 468 U.S. at 527-28.

[96]     (Pl.'s Resp., D.E. # 22, at 6.)

[97]     *Hudson*, 468 U.S. at 527-28.

12(b)(6).

Furthermore, as the Court is required to isolate the precise constitutional violation alleged by Plaintiff,[98] the Court interprets his unreasonable search claim as arising under the Eighth Amendment's prohibition against cruel and unusual punishment, and it will fold its evaluation of the scope of the search into its Eighth Amendment analysis below.

### § 1983 Claim for Verbal Slurs and Comments Under the Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."[99] The Supreme Court has recognized two types of cognizable claims under the Eighth Amendment: those involving "the unnecessary and wanton infliction of pain" and those alleging sentences disproportionate to the crime committed.[100]  Thus, the Sixth Circuit has noted that "the occasional use of racial slurs, 'although unprofessional and reprehensible, does not rise to the level of constitutional magnitude'" under the Eighth Amendment.[101]

Defendants have interpreted Plaintiff's Complaint as alleging an Eighth Amendment violation for Love's labeling Plaintiff a member of the "Arian Nation" during her search of his body.[102]  Defendants argue that there is "no constitutional cause of action for a racial slur" and that this aspect of Plaintiff's Complaint should be dismissed.[103]  In response, Plaintiff admits that

---

[98]     *Graham v. Connor*, 490 U.S. 386, 394 (1989).

[99]     U.S. Const. amend. VIII.

[100]     *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (citing *Solem v. Helm*, 463 U.S. 277, 284 (1983); *Rhodes v. Champan*, 452 U.S. 337, 345 (1981)).

[101]     *Jones Bey v. Johnson*, 248 F. App'x 675, 677 (6th Cir. 2007).

[102]     (Defs.' Mot., D.E. # 11, at 15.)

[103]     (*Id.* at 15-16.)

racial slurs do not often rise to the level of a constitutional violation, but he argues that verbal abuse accompanied by a "wanton act of cruelty" can create a constitutional violation.[104]  He asserts that Love's use of the racial slur "Arian Nation," combined with her invasive search in front of Johnson, rises to such a violation.[105]  In reply, Defendants cite the Tennessee case law relied on by Plaintiff in support of their assertion that Love did not perform a wanton act of cruelty required to create a constitutional violation.[106]

Here, Plaintiff has alleged only one racial slur uttered by Love: that she called him a member of the Arian Nation.  That singular slur, in isolation, is not actionable under the Eighth Amendment.  The Court acknowledges that Plaintiff cites to case law where verbal slurs can create a cognizable Eighth Amendment violation when combined with the use of force sufficient to cause harm.[107]  These cases arise from courts in the Second, Fifth, Eighth, Ninth, and Tenth Circuits and the Northern and Southern Districts of New York, the Eastern District of Texas, and the District of Massachusetts.  They indicate that verbal abuse must be accompanied by "a wanton act of cruelty" which would be considered "unusually brutal."[108]  However, in a footnote, the Tennessee Court of Appeals noted that "[t]he sort of conduct that would be actionable under . . . § 1983 would be making racial slurs, accompanied by drawing a weapon and threatening to

---

[104]     (Pl.'s Resp., D.E. # 22, at 5-6.)

[105]     (*Id.*)

[106]     (Defs.' Reply, D.E. # 23, at 8-9.)

[107]     *See Pendleton v. Mills*, 73 S.W.3d 115, 122-23 (Tenn. Ct. App. 2001).

[108]     *See McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *Spicer v. Collins*, 9 F. Supp. 2d 673, 683 (E.D. Tex. 1998).

shoot the prisoner," as indicated in cases from the Fifth, Eighth, and Tenth Circuits.[109]

It does not appear to the Court that the Sixth Circuit applies this standard to § 1983 claims for verbal abuse: the Court could find no cases stating as such. Accordingly, under settled Sixth Circuit precedent, Plaintiff cannot state a claim for an Eighth Amendment violation because Love used a racial slur during her search. However, even if the Sixth Circuit followed the law as described in other circuits, the Court would find that Plaintiff has still failed to state a claim for an Eighth Amendment violation. Love did not threaten to shoot Plaintiff or draw her weapon; rather, she was performing a search of his person when she made the racial comment. Assuming the search took place in the manner described in Plaintiff's Complaint, such a search was likely inappropriate and unprofessional, as was the utterance of the racial slur. However, Love did not threaten to kill Plaintiff or cause him physical harm. As such, her search was not a "wanton act of cruelty" or "unusually brutal." Therefore, the Court finds that Plaintiff has not stated a cognizable constitutional violation of his Eighth Amendment rights as relates to Love's utterance of the phrase "Arian Nation." Thus, Defendants' Motion in this regard is granted, and this portion of Plaintiff's § 1983 claim against Love is **DISMISSED** under Rule 12(b)(6).

### § 1983 Claim for Failure to Protect Under the Eighth Amendment

The Supreme Court has held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."[110] Presumably, prisoners' constitutional right to be protected from assault and sexual abuse by other prisoners would extend to protection from

---

[109]     *Pendleton*, 73 S.W.3d at 123 n.9.

[110]     *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994).

assault and sexual abuse by prison guards and correction officers as well.[111]  To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: "(1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety."[112]

Under the objective component, the inmate must show that the failure to protect from risk of harm is objectively "sufficiently serious;" that is, he must show that 'he is incarcerated under conditions posing a substantial risk of serious harm.'"[113] Under the subjective component, an inmate must show that prison officials "acted with 'deliberate indifference' to inmate health or safety. . . . An official is deliberately indifferent if he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'"[114]

In his Complaint, Plaintiff alleges that Johnson both failed to protect him from the alleged sexual assault and failed to supervise Love as she sexually assaulted Plaintiff.[115] Defendants interpret Plaintiff as bringing this claim under § 1983;[116] therefore, the Court will similarly interpret it.  In their Motion, Defendants note that any claim Plaintiff is attempting to

---

[111]    *See id.*

[112]    *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011).

[113]    *Id.* (quoting *Farmer*, 511 U.S. at 766).

[114]    *Id.* at 766-67 (quoting *Farmer*, 511 U.S. at 834, 837).

[115]    (Compl. ¶ 20.)

[116]    (Defs.' Mot., D.E. # 11, at 17.)

bring for failure to protect under the Eighth Amendment must demonstrate deliberate indifference on the part of the government to a substantial risk of serious harm.[117]  Defendants admit that they have a duty to protect inmates from assault by governmental employees, but they argue that Shelby County has a "zero tolerance [policy] for sexual harassment and sexual misconduct" and that Love had not previously been reprimanded or convicted of sexually assaulting an inmate before January 8, 2010.[118]  In support of their arguments, Defendants rely on the Affidavit filed with their Motion: that reliance transforms their Motion to Dismiss the claim into a Motion for Summary Judgment.

In Response, Plaintiff presents a single paragraph mixing together his responses to the § 1983 claim as relates to the Eighth Amendment, Duty to Protect, Violation of Policies and Procedures, and Search and Seizure.[119]  Plaintiff confines his response to Defendants' arguments regarding his failure to protect claim as follows: "Plaintiff alleges that the Defendants failed to protect him from sexual assault by . . . Love.  The action of . . . Love fondling Plaintiff was a violation of Plaintiff's constitutionally protected rights."[120]  Plaintiff did not present any evidence sufficient to meet Defendants' proffered evidence with regard to the failure to protect claim.  In reply, Defendants appear to reiterate their previous arguments and implicitly reassert that Plaintiff has not made a showing of deliberate indifference to a substantial risk of harm.[121]

---

[117]   (*Id.* at 17-18.)

[118]   (*Id.* at 18.)

[119]   (Pl.'s Resp., D.E. # 22, at 6-7.)

[120]   (*Id.* at 6.)

[121]   (Defs.' Reply, D.E. # 23, at 10-11.)

The Court has already dismissed all § 1983 claims against Shelby County.  Therefore, the only possible defendant remaining for this specific constitutional violation is Love.  Johnson was not named as a defendant in this suit.  Therefore, the Court finds that Plaintiff has failed to state a claim for failure to protect.  Unless Plaintiff is asking the Court to hold that Love failed to protect Plaintiff from herself, which the Court will not do, he has insufficiently pled a failure to protect claim by not naming Johnson in his Complaint.  Moreover, the Court need not rely on the Affidavit submitted by Defendants in reaching this conclusion.  Therefore, Plaintiff's § 1983 claim against Love for failure to protect is **DISMISSED** under Rule 12(b)(6).

### § 1983 Claim for Search and Seizure under the Eighth Amendment

It is well settled that inmates do not have the same constitutional protections from search and seizure as those who are not housed in a prison.[122]  However, inmates still retain some aspects of constitutional protection.  For example, they retain protection from excessive force under the Eighth Amendment.[123]  Significant injury is not the threshold inquiry for such a claim; rather, courts are to determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[124]  The absence of serious injury is not irrelevant to the Eighth Amendment inquiry, as it suggests whether the use of force could plausibly have been thought necessary and indicates the amount of force applied.[125]

---

[122]     *See Crump v. Curtis*, 50 F. App'x 217, 218 (6th Cir. 2002).

[123]     *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-1180 (2010) (per curiam).

[124]     *Id.* at 1178 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 9 (1992) ("When prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency are always violated . . . whether or not significant injury is evident.")).

[125]     *Id.*

However, while de minimis use of physical force is excluded from constitutional recognition, even de minimis force will be constitutionally cognizable if it is "of a sort repugnant to the conscience of mankind."[126]

Defendants have moved for dismissal of any claim Plaintiff has made about being searched for contraband while in the dormitory.  In their Motion, Defendants state that "searches are a routine part of prison life" and imply that Love's search of Plaintiff did not violate any of his constitutional rights.[127]  To the extent that Plaintiff's § 1983 claim relates to "unwelcome touching during the pat down," Defendants assert that this claim fails as well.[128]  Love's search may have been unwelcome, but Defendants attempt to imply that it was done in a good faith effort to maintain discipline, not to maliciously and sadistically cause harm.[129]

In response, Plaintiff points out that "Love, not another male officer, conducted the strip search on Plaintiff in which she fondled his private parts.  This action goes directly against the policies as outlined in the affidavit . . . provided by Defendants."[130]  Plaintiff cites to the same case as Defendants but arrives at the opposite conclusion: he implies that Love's inappropriate sexual assault and racial slur resulted in cruel and unusual punishment under the Eighth Amendment.[131]  In reply, Defendants rely on the Alexander Affidavit and appear to argue that

---

[126]     *Id.* (quoting *Hudson*, 503 U.S. at 9.)

[127]     (Defs.' Mot., D.E. # 11, at 16.)

[128]     (*Id.* at 17.)

[129]     (*Id.*)

[130]     (Pl.'s Resp., D.E. # 22, at 6.)

[131]     (Pl.'s Resp., D.E. # 22, at 7.)

because Love was fully investigated and later exonerated, Plaintiff did not suffer any cruel and unusual punishment.[132]  This reliance converted the Motion into one for Summary Judgment.

The Court must address Plaintiff's reliance on the Alexander Affidavit before it turns to its legal analysis.  The Court finds that its reliance on the Alexander Affidavit to infer that Love did not step beyond the bounds of her authority when she searched Plaintiff would be in error. Anthony Alexander lacked personal knowledge as to the events of January 8, 2010, and the SCDC's determination of Love's inculpability is irrelevant to this Court's evaluation of Love's search of Plaintiff.  The Alexander Affidavit also contains statements from Love that she did not strip search Plaintiff but instead conducted a simple pat down.  Again, Alexander does not state that he was present at the search; therefore, he lacks personal knowledge as to Love's actions during the search, and the Court will disregard his statements.

Defendants have failed to provide any admissible evidence of the events of January 8, 2010: they have not provided an affidavit of Love or Johnson.  Similarly, Plaintiff has failed to provide admissible evidence as well: his handwritten, unauthenticated letter is not competent evidence upon which the Court can rely at summary judgment.  Therefore, the Court finds that the parties have failed to provide undisputed facts sufficient for it to decide the merits of Plaintiff's § 1983 claim.  Accordingly, Defendants' Motion for Summary Judgment on this claim is **DENIED**.

However, because Defendants also moved for dismissal of this claim, the Court now turns to the sufficiency of Plaintiff's Complaint.  The Court must bifurcate its holding regarding the sufficiency of Plaintiff's Eighth Amendment § 1983 claim.  To the extent that Plaintiff has

---

[132]    (Defs.' Reply, D.E. # 23, at 10.)

attempted to state a claim for being subjected to a search for contraband, such a claim is prohibited by his status as an inmate.  Inmates have no constitutional protection from being searched while they are in prison.  Therefore, the Court **GRANTS** Defendants' Motion to Dismiss in this regard.

However, the Court finds that Plaintiff has sufficiently stated a claim for the alleged sexual assault occurring during Love's search.  While the Complaint does not indicate that Plaintiff suffered any definite injury other than his conclusory allegation that he experienced "physical and mental injuries,"[133] he has alleged a search that, when taking all facts in the Complaint as true, appears to have gone beyond the scope permitted by the Eighth Amendment.  That is, the search's scope, rather than the search itself, permits Plaintiff to state a claim under § 1983 against Love.

Plaintiff has pled that he was injured physically, and he has pled that the search occurred in embarrassing circumstances before his fellow inmates in the dormitory.  Furthermore, Love's utterance of the racial epithet "Arian Nation" during the search could indicate that she performed the search in a "malicious and sadistic" manner.  Therefore, the Court finds that Plaintiff has successfully stated a § 1983 claim against Love for violation of his Eighth Amendment rights regarding the scope of the search.  Accordingly, Defendants' Motion to Dismiss this claim is **DENIED**.

<u>**CONCLUSION**</u>

For the reasons set forth above, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.  All claims against

---

[133]      (Compl. ¶ 35.)

Shelby County have been dismissed.  All § 1983 claims against Love in her individual capacity have been dismissed with the exception of Plaintiff's Search and Seizure Eighth Amendment claim.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**

S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: February 20, 2012.

39